**Carlo P. BIANCONI, et al, Plaintiffs**

v.

**Dr. Ronald A. PRESTON, et al, Defendants**

**No. CIV.A. 03–30268–MAP.**

United States District Court, D. Massachusetts.

Aug. 23, 2005.

*MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT* (Docket No. 28)

PONSOR, District Judge.

At the heart of this litigation is the dilemma faced by couples, often in their later years, when infirmity requires one of the pair to receive full-time care in an institution while the other remains in the community. The substantial expense in-

curred by the institutionalized spouse will make eventual reliance upon Medicaid, in many cases, inevitable.

Prior to 1988, eligibility for Medicaid often demanded the virtual impoverishment of both spouses. The passage of the "Protection of Income and Resources of Couples for Maintenance of Community Spouse" provisions of the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), Pub.L. No. 100–360, § 303, 102 Stat. 683, 754–764, sought to end the pauperization of the community spouse by insuring that he or she would have sufficient, but not excessive, income and resources available for support. 42 U.S.C. § 1396r–5 *See, generally, Wisconsin Department of Health and Family Services v. Blumer,* 534 U.S. 473, 479–80, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002).

In Massachusetts, and in many other states, state authorities, in calculating the resources available for the community spouse will deem certain income paid in the name of the institutionalized spouse as being available for the community spouse. With this additional income attributed to the spouse remaining in the community, that spouse will be allocated a smaller percentage of the couple's assets for support, with the result that the couple will have to spend down a somewhat greater portion of their assets before the institutionalized spouse will qualify for Medicaid.

Included among the sorts of income that may be deemed available to the community spouse in Massachusetts are both Social Security and Veteran's benefits. In other words, in calculating the amount of income available for the spouse remaining in the community, Massachusetts, along with other states, will consider as available to the community spouse Social Security and Veteran's benefits payable to the husband or wife who is institutionalized. This "deeming" process does not involve actual seizure of any Social Security or Veteran's benefits, nor does it involve any requirement that the institutionalized spouse actually pay any money to the community spouse. These funds are simply deemed to be available to the community spouse for purposes of calculating the institutionalized spouse's Medicaid eligibility.

The plaintiffs assert that this "deeming" of benefit income in favor of the community spouse violates the "anti-attachment" provisions of the Social Security and Veteran's Acts, 42 U.S.C. § 407(a) and 38 U.S.C. § 5301(a)(1), respectively. Plaintiffs have moved for class certification with regard to this issue, and the court has allowed this motion (Docket No. 27). Plaintiffs, in addition, have moved for summary judgment on their claim of violation of the proscription against alienation of Social Security and Veteran's benefits.

Counsel came before this court for argument on the plaintiff's Motion for Summary Judgment on August 16, 2005. At that time, the court inquired with regard to the absence of any cross-motion for summary judgment offered by the defendants. The defendants' memorandum (Docket No. 32) does seek summary judgment in the defendants' favor, but no separate motion was filed. Plaintiffs' counsel agreed that the plaintiffs' Motion for Summary Judgment raised a pure question of law and that, if plaintiffs' motion were denied, it would be appropriate for the court to consider summary judgment for the defendants.

Following oral argument, the court indicated that it would be denying the plaintiffs' Motion for Summary Judgment and ordering entry of summary judgment in favor of the defendants based upon the Supreme Court's decision in *Washington State Department of Social and Health Services v. Guardianship Estate of Keffel-*

*er*, 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003).

In *Keffeler*, Justice Souter, writing for a unanimous court, found that the State of Washington's "use of Social Security benefits to reimburse itself for some of its initial expenditures" did not violate the provision of the Social Security Act protecting benefits from "execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a). *Id.* at 375, 123 S.Ct. 1017. In articulating this holding, the Court took a narrow view of what constituted legal process for purposes of the anti-alienation provisions of the Social Security Act. A forbidden legal process "should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Id.* at 385, 123 S.Ct. 1017.

In this case, the "deeming" process used by the Commonwealth of Massachusetts in determining Medicaid eligibility has even less resemblance to any "legal process" recognized by the Supreme Court than the process used by the State of Washington in *Keffeler*. The mere fact that an unhappy spouse may request a fair hearing to review decisions in this "deeming" process does not create any type of administrative or judicial mechanism bearing any resemblance to "execution, levy, attachment or garnishment." Since the Veteran's Act provisions closely parallel the anti-alien-

ation provisions of the Social Security Act, *Keffeler*'s holding is fatal to both aspects of the plaintiffs' claim here.[1]

For the foregoing reasons, the plaintiff's Motion for Summary Judgment (Docket No. 28) is hereby DENIED. This court, *sua sponte*, but with the agreement of both parties, hereby grants summary judgment for the defendants and orders entry of judgment for the defendants on all counts. This case may now be closed.

It is So Ordered.

---

1. Plaintiffs are correct that the Second Circuit's decision in *Robbins v. DeBuono*, 218 F.3d 197 (2nd Cir.2000), strongly favors the plaintiffs here. *Robbins*, of course, is not binding in this Circuit, and this court finds it unpersuasive. Moreover, it predates *Keffeler*, and the Second Circuit has recognized that the Supreme Court's more recent decision throws a shadow over *Robbins*. *See Binder & Binder PC v. Barnhart, Commissioner of Social Security*, 399 F.3d 128, 134 (2nd Cir.2005).